Monica G. Cockerille (ISB No. 5532)
MonicaCockerille@me.com
Cockerille Law Office, PLLC
2291 N. 31st Street
Boise, ID 83703
Telephone:(208) 343-7676
Facsimile: (866) 226-2499

Thomas A. Marrinson (*Pro Hac Vice Pending*)
Email:  tmarrinson@reedsmith.com
Ashley D. Rodriguez (*Pro Hac Vice Pending*)
Email:  arodriguez@reedsmith.com
REED SMITH LLP
10 South Wacker Drive
Chicago, IL  60606-7507
Telephone: +1 312 207 1000
Facsimile: +1 312 207 6400

Attorneys for Plaintiff
The Amalgamated Sugar Company LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE AMALGAMATED SUGAR COMPANY LLC,<br><br>Plaintiff,<br><br>vs.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>Defendant. | Case No.: _____<br><br>**COMPLAINT FOR:**<br><br>**1) BREACH OF CONTRACT;**<br>**2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**<br>**3) DECLARATORY JUDGMENT**<br><br>[JURY TRIAL REQUESTED] |

NOW COMES Plaintiff The Amalgamated Sugar Company LLC ("Amalgamated") by its undersigned counsel, and for its Complaint against Defendant The Cincinnati Insurance Company, with knowledge and on information and belief alleges as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage action arising out of a claim for insured third-party property damage that Defendant wrongfully and in bad faith denied. Plaintiff Amalgamated seeks: (a) damages for Defendant's breaches of a liability insurance policy issued by Defendant; (b) damages for Defendant's violation of the implied duty of good faith and fair dealing, including punitive damages; and (c) a declaration as to the rights and obligations of the parties under said liability insurance policy.

## THE PARTIES

2. Plaintiff Amalgamated is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Boise, Idaho, and at all times relevant hereto was, and is, authorized to transact, and was and is transacting business in Boise, Idaho.

3. As a limited liability company, Amalgamated's sole member is Snake River Sugar Company, organized under the laws of the State of Oregon, with its principle place of business in Boise, Idaho.

4. Based on information and belief, Defendant The Cincinnati Insurance Company is a corporation organized under the laws of Ohio, with its principle place of business in Fairfield, Ohio, and at all times relevant hereto was authorized to transact the business of insurance in the State of Idaho, and has transacted insurance business as such in this State and this judicial district and has substantial commercial contacts and impact within this State and this judicial district.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(2) because there is complete diversity of the citizenship of the parties and the amount in controversy is greater than $75,000, exclusive of interest, attorney fees, and costs.

6. This Court has personal jurisdiction over Defendant because, among other reasons, the Policy of insurance at issue in this matter (described more fully below): (a) was to be performed by Defendant, in whole or in part, within this State and this judicial district; (b) was procured through a broker licensed to do business in this State; (c) insures Plaintiff and provides indemnity for liability arising from their products some of which are located within this judicial district; and (d)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

provides that Defendant shall submit to the jurisdiction of a court of competent jurisdiction within the United States.

7. Further, Amalgamated brings this declaratory judgment action pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, to determine an actual case or controversy regarding a claim for benefits seeking a determination of the rights and obligations pertaining to the Policy of insurance at issue in this matter which was issued in this State and this judicial district.

8. Venue is proper in this judicial district, and division, pursuant to 28 U.S.C. § 1391 (a), (b)(2), and (c) because a substantial part of the events giving rise to this claim occurred in this judicial district and Defendant transacts insurance business and resides in this judicial district.

## FACTUAL BACKGROUND

**Amalgamated's Underlying Loss**

9. Amalgamated is the second-largest sugarbeet processor in the United States, facilitating all areas of sugarbeet growth and granulated sugar production.  On or around December 1, 1992, Amalgamated entered into a written contract with D&S Ingredient Transfer Company, Inc. ("D&S") wherein D&S agreed to accept shipments of granulated sugar from Amalgamated, liquefy the sugar to produce a liquid sugar product, and deliver the liquid sugar product to Amalgamated's customers (the "Agreement").

10. Amongst other terms, D&S agreed not to contaminate the sugar and to safeguard against any such possible contamination.

11. In or around October 2014, Amalgamated provided granulated sugar to D&S to liquefy pursuant to the Agreement.  To make the liquid sugar product, D&S added Los Angeles municipal water to dissolve the granulated sugar.  Thereafter, D&S supplied the liquid sugar to Amalgamated's customers, including Nestle USA's Dreyer's Grand Ice Cream subsidiary ("Dreyers"), PepsiCo, Inc.'s Pepsi-Cola Advertising and Marketing, Inc. licensee ("Pepsi"), and Golden State Foods ("Golden"), to include in their food and/or drink products.

12. However, during some of Amalgamated's customers' internal quality control testing, it was revealed that the liquid sugar supplied by D&S caused the food and/or drink products to have

an off-taste and off-smell. While the food and/or drink products were not dangerous or hazardous, every product that included the liquefied sugar provided by D&S was irreparably damaged, lost all use, could not be sold to consumers, and was destroyed.

13. On information and belief, it was discovered that the Los Angeles municipal water that D&S used to liquefy Amalgamated's granulated sugar contained excess amounts of chlorine, which caused the off-taste and off-smell in the damaged products.

14. Dreyers, Pepsi, and Golden each demanded that Amalgamated compensate them for the losses they incurred as a result of the damaged liquid sugar shipments, including, amongst other losses, the cost of (a) the sugar they had purchased, (b) processing their products with the damaged sugar, (c) disposing of the damaged sugar and their damaged products, and (d) remediating their contaminated facilities. These demands and claims totaled approximately $1,073,000.

**Defendant's Insurance Policy**

15. Defendant issued a commercial insurance policy, Policy Number CAP 5228649 (the "Policy") to Amalgamated for the coverage period of March 1, 2014 to March 1, 2017. The Policy contains a Commercial General Liability coverage part (the "CGL Coverage Section"), which uses Commercial General Liability Coverage Form GA 101 (12/04 edition). The CGL Coverage Section has a $1,000,000 per occurrence limit, a $2,000,000 general aggregate limit, and a $2,000,000 products-completed operations aggregate limit.

16. The Policy also includes an Umbrella coverage part (the "Umbrella Coverage Section"), for which it uses Commercial Umbrella Liability Coverage Form US 101 UM (12/04 edition). The Umbrella Coverage Section has a $5,000,000 per occurrence limit and a $5,000,000 aggregate limit.

17. Pursuant to the CGL Coverage Section, Defendant specifically agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage.'" (See "Section I – Coverages, Coverage A. Bodily Injury and Property Damage Liability, 1. Insurance Agreement" of the Policy.) Pursuant to the express language in the CGL Coverage Section, "property damage" includes: "a. Physical injury to tangible property, including all resulting

loss of use of that property. . . . or b. Loss of use of tangible property that is not physically injured. . . ."

18. The CGL Coverage Section also includes an "Injury or Damage to or Resulting From Your Work and Injury or Damage Resulting From Your Product" endorsement, Form GA 4315 (03/12 edition) (the "CGL Coverage Endorsement"), which applies to "'property damage' to or resulting from 'your work', 'property damage' resulting from 'your product', and 'bodily injury' resulting from 'your work' and 'your product.'"

19. The CGL Coverage Endorsement expands coverage:

> **A.** . . . to include damages which you become legally obligated to pay because of 'property damage' that is:
>
> (1) To "your work", if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor; or
>
> (2) To property other than "your product" or "your work", if the "property damage" is caused by or results from "your product" or "your work";
>
>  if such "property damage":
>
> (1) Consists of physical injury to tangible property, including all immediately ensuing, resulting loss of use of that property; and
>
> (2) Is included within the "products-completed operations hazard". . . .

20. The Umbrella Coverage Section includes an endorsement, Form US 3070 (03/12 edition), entitled "Contractors Limitations – Including Excess Wrap-Up and Injury or Damage To or Resulting From Your Work and Injury or Damage Resulting From Your Product" (the "Umbrella Coverage Endorsement"). In all relevant and material respects, the Umbrella Coverage Endorsement includes identical language to that contained in the CGL Coverage Endorsement.

21. The CGL Coverage Section defines the term "your work," which "[m]eans: (1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." The Umbrella Coverage Section includes an identical definition of the same term.

22. Moreover, the CGL Coverage Section defines the term "products-completed operations hazard" as "includ[ing] all 'bodily injury' and 'property damage' occurring away from

premises you own or rent and arising out of 'your product' or 'your work' . . . ." The Umbrella Coverage Section contains an identical definition of "products-completed operations hazard."

23. With respect to the Umbrella Coverage Section, Defendant agreed to "pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages for . . . 'property damage' to which this insurance applies: a. which is in excess of the 'underlying insurance'; or b. which is either excluded or not insured by 'underlying insurance.'" "'Ultimate net loss' means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise.'"

24. The Umbrella Coverage Section contains a nearly identical definition of "property damage" with the following added language noted in italics: "'Property damage' means: a. Physical injury to *or destruction of* tangible property including all resulting loss of use. . . . or b. Loss of use of tangible property that is not physically injured. . . ."

**The Tender of the Loss and Defendant's Bad Faith Denial**

25. Amalgamated provided Defendant with timely notice of the occurrence and its claim for coverage under the Policy arising out of its customers' losses (the "Claim"). At that time, Defendant took actions acknowledging coverage of Amalgamated's Claim. Indeed, Defendant even went so far as to fund and control arbitration proceedings against D&S (the "Arbitration") as if Defendant already had paid the losses for which Amalgamated sought coverage from Defendant.

26. Having long ago been notified of this occurrence, Defendant had every opportunity to address the liability potential that Amalgamated faced from its customers. Yet, for years and while it continued to the Arbitration, it never addressed Amalgamated's potential liability or sought to resolve Dreyers', Pepsi's or Golden's claims and demands on behalf of Amalgamated. Indeed, on information and belief, Defendant did nothing to reach out to Amalgamated's customers in an attempt to settle matters with them, as it was obligated to do. Amalgamated reasonably relied on Defendant's actions and handling of its claim for the past several years, but Defendant has failed in its most basic duty to protect Amalgamated against liability.

27. Notwithstanding its conduct and representations of at least partial coverage for the underlying claims against Amalgamated, on or around October 8, 2018, years after it first began

funding the Arbitration and handling the Claim, Defendant reversed course and for the first time sent a letter to Amalgamated denying coverage of the Claim. Specifically, Defendant stated that its "coverage decision" or "coverage determination" was to "decline" Amalgamated's request for coverage of its losses.

28.  Despite its years of notice and its own failures to address Amalgamated's potential liability to its customers, Defendant now at the eleventh hour – and one month before the Arbitration is scheduled to begin – disingenuously and in bad faith has blamed Amalgamated for the fact that its customers unilaterally addressed their claims by taking offsets to amounts they owe Amalgamated after Defendant did nothing to resolve Amalgamated's liability. Instead, Defendant has been entirely focused on attempting to shift its own responsibility for resolving Amalgamated's liability onto D&S and its insurer, thereby placing its own interests ahead of those of its insured, Amalgamated.

## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

29.  Amalgamated hereby incorporates by reference paragraphs 1-27 of this Complaint as if fully set forth herein.

30.  Defendant has failed to honor and has committed substantial and material breaches of its contractual duty under the Policy by wrongfully refusing to indemnify Amalgamated for its damages in connection with the claims and demands by Amalgamated's customers arising out of their damaged products.

31.  Amalgamated complied with all of the terms and conditions of the Policy and performed all other required conditions and obligations under the Policy, except insofar as such conditions or obligations are subject to excuse, waiver, estoppel or other avoidance.

32.  As a direct and proximate result of Defendant's breaches of its contractual obligations under the Policy, Amalgamated has sustained money damages in an amount not yet ascertained, and Defendant is liable to Amalgamated for these money damages, attorney's fees, and for costs which have been or may be incurred by or on behalf of Amalgamated as a result of liability in connection

with the damaged products Claim, whether by way of judgment, settlement, or otherwise. Amalgamated also requests such other and further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING)

33. Amalgamated hereby incorporates by reference paragraphs 1-31 of this Complaint as if fully set forth herein.

34. In every contract of insurance, including without exception the Policy, there is an implied covenant of good faith and fair dealing that the insurance company will do nothing to unfairly deprive the insured of the benefits of the contract, that the insurer will give at least as much consideration to the interests of the insured as it does its own interests, that the insurer will exercise diligence, good faith, and fidelity in safeguarding the insured's interests, that it will deal ethically with the insured and will fairly and adequately inform the insured with respect to the nature and scope of its insurance coverage (hereinafter referred to as the "covenant of good faith and fair dealing").

35. Defendant was bound by the covenant of good faith and fair dealing when it entered in to the Policy, and it owed the duty of good faith and fair dealing with respect to its handling of Amalgamated's Claim relating to the damaged products.

36. Coverage of Amalgamated's property damage Claim was not fairly debatable. Defendant was obligated to indemnify Amalgamated in connection with the damaged property Claim pursuant to the terms of the Policy but refused to do so. As a result, Defendant breached its express and implied obligations by failing to indemnify Amalgamated with respect to its damaged property Claim.

37. Defendant has acted in bad faith toward Amalgamated by, among other things, unreasonably, willfully, and wantonly refusing to pay policy proceeds due to Amalgamated, with knowledge of or reckless disregard for the lack of any reasonable basis for denying such payments. Defendant's denial of Amalgamated's Claim was not due to a good faith mistake.

38. As a direct and proximate result of Defendant's beach of the implied covenant of good faith and fair dealing, Amalgamated has sustained money damages, court costs and prejudgment interest, in an amount not yet ascertained.

39. In addition to these money damages, Amalgamated has also incurred, continues to incur, and will in the future incur attorney's fees and expenses to prove its coverage rights under the Policy because of Defendant's wrongful and bad faith breach of its obligations under the Policy. Defendant is also liable to Amalgamated for all such fees and expenses, together with interest.

40. Moreover, in breaching the implied covenant of good faith and fair dealing, Defendant has acted in a manner knowingly harmful to and/or in conscious disregard of the rights of Amalgamated, reflecting malice and/or oppression, and with deliberate intent to vex, injure, and annoy Amalgamated so as to deprive it of its rights under the Policy. Accordingly, Defendant is liable to Amalgamated for punitive damages.

41. Amalgamated also requests such other and further relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION
## (DECLARATORY JUDGMENT)

42. Amalgamated hereby incorporates by reference paragraphs 1-40 of this Complaint as if fully set forth herein.

43. Under the Policy, Defendant is obligated to pay in full, up to the respective applicable policy limits, all sums which Amalgamated is or will become legally obligated to pay, through judgment, settlement, or otherwise as a result of the property damage Claim.

44. Defendant has failed and refuses to accept its obligations under the Policy to provide indemnity coverage to Amalgamated for losses related to the property damage Claim.

45. Defendant's failure to honor its obligations under the Policy has harmed Amalgamated and will continue to harm Amalgamated by requiring it to pay liabilities arising from the property damage Claim.

46. By reason of the foregoing, an actual and justiciable controversy has arisen and now exists between Amalgamated, on the one hand, and Defendant, on the other with respect to the

construction and interpretation of the Policy of insurance issued by Defendant to Amalgamated in connection with the property damage Claim. Accordingly, Amalgamated seeks a declaration of the present and future rights, duties and obligations of Amalgamated and Defendant with respect thereto, and such other and further relief as the Court may deem just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Amalgamated prays that the Court enter judgment against Defendant as follows:

#### WITH RESPECT TO ALL CAUSES OF ACTION:

1. For attorneys' fees and expenses incurred herein;
2. For costs of suit incurred herein; and
3. For such other and further relief as the Court may deem just and proper.

#### WITH RESPECT TO THE FIRST CAUSE OF ACTION:

4. For damages in an amount to be determined at the time of trial; and
5. For pre-judgment and post-judgment interest.

#### WITH RESPECT TO THE SECOND CAUSE OF ACTION:

6. For damages in an amount to be determined at the time of trial;
7. For pre-judgment and post-judgment interest; and
8. For additional punitive or exemplary damages in an amount to be determined at trial;

#### WITH RESPECT TO THE THIRD CAUSE OF ACTION:

9. For a judicial declaration that the Policy issued to Amalgamated by Defendant obligates Defendant to indemnify Amalgamated for all damages arising out of the property damage Claim.

//
//
//
//
//

//

## DEMAND FOR JURY TRIAL

Amalgamated demands a trial by jury of any and all issues so triable.

DATED: October 15, 2018

        By: /s/ Monica G. Cockerille
             Monica G. Cockerille (ISB No. 5532)
             MonicaCockerille@me.com
             Cockerille Law Office, PLLC
             2291 N. 31st Street
             Boise, ID 83703
             Telephone:  (208) 343-7676
             Facsimile:  (866) 226-2499

             Thomas A. Marrinson (*Pro Hac Vice Pending*)
             Email:  tmarrinson@reedsmith.com
             Ashley D. Rodriguez (*Pro Hac Vice Pending*)
             Email:  arodriguez@reedsmith.com
             REED SMITH LLP
             10 South Wacker Drive
             Chicago, IL 60606-7507
             Telephone: +1 312 207 1000
             Facsimile: +1 312 207 6400

REED SMITH LLP
A limited liability partnership formed in the State of Delaware